UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE RECEIVABLES EXCHANGE, LLC | CIVIL ACTION |
| VERSUS | NO:   14-0668 |
| ADVANCED TECHNOLOGY SERVICES, INC., ET AL. | SECTION: "H" (4) |

**REPORT AND RECOMMENDATION**

Before the Court is **Plaintiff's Motion for Determination of Professional Fees and Costs (R. Doc. 49)**. On November 7, 2014, the District Judge entered a default judgment in favor of the Plaintiff, The Receivables Exchange, LLC ("TRE"), with the attorney's fees to be determined by the Magistrate Judge. *See* R. Doc. 48. The Plaintiff now seeks to recover $10,367.00 in attorney's fees and $1,076.66 in costs, for an hourly rate of $340.00. The motion is unopposed and was heard on the briefs.

**I.   Background**

This action arises out of the breach of a contract between the Plaintiff, TRE, and the Defendant, Advanced Technology Services, Inc. ("ATS"). TRE is a Louisiana limited liability company with its principal place of business in New York. It operates an exchange business in New Orleans, Louisiana where businesses can sell their accounts receivable[1] over an electronic auction. The buyer of the receivable becomes the owner and the seller is paid a sum of money as consideration for the receivable.

A business wishing to sell their receivables through TRE must enter into a contract that governs the sale of the receivables. As a seller, ATS executed a seller agreement contract, granting TRE, in its individual capacity and as an agent for the buyers, a continuing security interest in its accounts and general intangibles, which was perfected on February 6, 2013. The

---

[1] Receivables are a debt, or a claim that is expected to be paid, that is owed to a company by a third party.

contract also provided that ATS, as the seller, may be obliged to repurchase a receivable sold through TRE if the account debtor fails to make timely payment after the receivable is sold.

Several of ATS's receivables were sold through TRE but the account debtors on the receivables failed to tender timely payment to the buyers. Thus, under the contract, ATS was obligated to repurchase the unpaid receivables but failed to do so. On March 24, 2014, TRE filed the instant action to collect the repurchase price of the receivables. Initially, TRE named as defendants the eight account debtors on the receivables but voluntarily dismissed those parties without prejudice on July 31, 2014.

The complaint was served upon ATS on March 27, 2014 and ATS's answer was due on April 17, 2014. *See* R. Doc. 6. ATS failed to answer or otherwise respond and a default judgment was entered against ATS on November 7, 2014. The default judgment was in the amount of $1,418,526.26, plus the costs of the proceeding and attorney's fees as determined by the Magistrate Judge. *See* R. Doc. 48.

TRE filed the subject motion pursuant to the Court's Order issued on November 7, 2014. Upon receipt of the motion, the Court noted that the submission did not comply with Local Rule 54.2 and *Blum v. Stenson*, 465 U.S. 886, 896 (1984), which requires the submission of satisfactory proof of education, background or experiences. *See* R. Doc. 54. The Court ordered that TRE (1) submit satisfactory proof of education, background and experience; (2) provide the Court with sufficient evidence of rates charged in similar cases by other local attorneys with similar experience, skill and reputation; and (3) provide the Court with a copy of the fee agreement, no later than January 19, 2015. *Id.* at 2. TRE complied with the Order and filed a supplemental memorandum on January 16, 2015. *See* R. Doc. 55.

...

**II.     Standard of Review**

In diversity actions such as this, state law controls both the award of and the reasonableness of attorney's fees awarded. *See Alyeska Pipeline Services Co. v. Wilderness Society*, 421 U.S. 240, 259 n.31 (1975); *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). "[A]s a general rule attorney fees are not allowed except when authorized by statute or contract." *Killebrew v. Abbott Laboratories*, 359 So.2d 1275, 1279 (La. 1978).

In assessing the reasonableness of attorney's fees, ten factors are taken into account. *State of Louisiana Dep't of Transportation and Development v. Williamson*, 597 So.2d 439, 442 (La.1992). These factors are (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. *Id.* at 442.

The *Williamson* factors are in turn derived from Rule 1.5(a) of the Rules of Professional Conduct. *Id.* at 442 n. 9. These Rules "have the force and effect of substantive law." *Gulf Wide Towing, Inc. v. F.E. Wright (U.K.) Ltd.*, 554 So.2d 1347, 1354–55 (La.App. 1 Cir. 1989) (citation omitted). Under Rule 1.5(a), the Court should consider the following when determining the reasonableness of any attorney's fee motion:

>   (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
>   (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
>   (3) the fee customarily charged in the locality for similar services;
>
>   (4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

*Id.* Both the *Williamson* factors, as well as those under Rule 1.5(a), are permissive and consideration of all of them is not necessary in any one case. *Fourchon Docks, Inc. v. Milchem Inc.*, 849 F.2d 1561, 1568 (5th Cir. 1988); *GMAC Commercial Mortgage Corp. ex rel. Lasalle National Bank v. Chateau Deville Apartments Partnership*, No. 02–1845, 2003 WL 21674467, at *2 n.1 (E.D. La. July 16, 2003) (Vance, J.) (citing *Fourchon*, 849 F.2d at 1568).

Similarly, the reasonableness of a particular fee is determined by the facts of an individual case. *Gottesegen v. Diagnostic Imaging Services*, 672 So.2d 940, 943 (La. App. 5 Cir. 1996). Parties are not entitled to "collect a fee that is 'clearly excessive.'" *Oreck*, 2009 WL 961276, at *2 (quoting *National Information Services, Inc. v. Gottsegen*, 737 So.2d 909, 919 (La. App. 5 Cir. 1999)). When considering the appropriateness of a particular fee, the Court should consider "the entire record, including discovery, pretrial motions, [and] the legal issues involved." *Richardson v. Parish of Jefferson*, 727 So.2d 705, 707 (La. App. 5 Cir. 1999). A court need not hear evidence concerning time spent or hourly rates charged in order to make an award; the record should appropriately reflect the majority of the services rendered. *In re Andras*, 410 So.2d 328, 331 (La. App. 4 Cir. 1982).

**III.   Analysis**

    **A.   Attorney Fees**

The Court will now consider the aforementioned *Williamson* factors, but notes that all of the factors will not be considered. *See Fourchon*, 849 F.2d at 1568("[T]he guidelines are permissive and [] consideration of them all is not mandatory."). The instant motion before the Court does not address any of the *Williamson* factors delineated from Rule 1.5(a).  The Court concludes that given the lack of briefing from TRE and the absence of an opposition from ATS, the most important factors to consider are: (a) legal knowledge, attainment, and skill of the attorney; (b) fees customarily charged in the local community; (c) amount of money involved; and (d) character and extent of work performed and intricacy of facts.

Additionally, after the Court considers the attorney fee factors, it will then consider the calculation of the attorney fee award.

        **1.   Factors in the Award**

            **a.   Legal Knowledge, Attainment, and Skill of the Attorney**

TRE seeks to recover fees for its attorney David F. Waguespack. R. Doc. 49. In support of Waguespack's hourly rate, his Affidavit states that he is a partner in the law firm of Carver, Darden, Koretzky, Tesseir, Finn, Blossman & Areaux, LLC. *See* R. Doc. 55-1, at 1. Waguespack obtained his J.D. from Tulane University Law School where he graduated *magna cum laude* and as a member of the Order of the Coif in 1991. *Id.* Waguespack has been practicing in the area of commercial litigation, creditors' rights and bankruptcy since 1991, and has been recognized for his work by Best Lawyers, Chambers USA: America's Leading Lawyers for Business, and Louisiana Super Lawyers. *Id.* at 2. Waguespack is board certified in business bankruptcy by the American Board of Certification and by the Louisiana Board of Legal Specialization. *Id.* Since

5

2003 Waguespack has taught business law as an adjunct professor at Tulane University Law School and has presented numerous programs in the areas of creditors' rights and bankruptcy. *Id.*

Additionally, while TRE identified Waguespack as its attorney for whom it seeks fees, the billing records show that other members of their firm have billed time associated with this file. Specifically, the billing records include the fees of two paralegals, Michelle Pender and Kristen Reyna. TRE, however, did not provide the Court with any information pertaining to the paralegals. Having not received any documents evidencing each paralegal's education, background, or experience, the Court hereby denies TRE's request for attorney fees associated with the work performed by them.

Having considered Waguespack's Affidavit which attests to his legal education, knowledge, and skill, the Court finds that TRE has satisfied this factor.

### b. Fees Customarily Charged in the Local Community

The fee application submitted by TRE seeks to recover fees for Waguespack at a rate of $340/hr. Waguespack states that his rate of $340/hr is his standard rate as an attorney who practices complex commercial litigation, creditor's rights, and bankruptcy and the rate is at or below the average market rate based on his 23 years of experience, education, and background. *See* R. Doc. 55-1, at 2. In support of this contention, Waguespack cites to *Wells Fargo Equipment Finance, Inc. v. Beaver Construction, LLC*, No. 10-0386, 2011 WL 5525999 (W.D. La. 2011), where the hourly rate of $340 was found reasonable for TRE's previous counsel, Richard Aguilar who had 20 years of experience. *Id.* at 3. Waguespack also cites to *In re Picadilly Restaurant, LLC*, et al, No. 12-51227 (Bankr. W.D. La. 2014), where TRE's previous counsel, Lisa Futrell, was awarded an hourly rate of $400 for 30 years of experience.

Both the Louisiana Rules of Professional Conduct and federal law require that reasonable hourly rates be calculated in relation to prevailing local standards. *See* Rule 1.5(a)(3); *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Powell v. C.I.R.*, 891 F.2d 1167, 1173 (5th Cir. 1990). Louisiana federal courts sitting in diversity have applied both federal and state cases to determine whether a requested rate reflects rates actually charged in the community. *See Tango Transport, L.L. C. v. Transport International Pool, Inc.*, 2011 WL 1304870, at *5 (W.D. La. Mar. 15, 2011); *Verizon Business Global LLC v. Hagan*, No. 07–415, 2010 WL 5056021, at *3–*7 (E.D. La. Oct. 22, 2010), *report and recommendation adopted by*, 2010 WL 5057517 (E.D. La. Dec. 1, 2010), *vacated on other grounds by*, 467 F. App'x 312 (5th Cir. 2012). "The actual time expended and the complexity of the case are the dominant factors in a court's determination of reasonableness or excessiveness." *GMAC*, 2003 WL 21674467, at *2 (quoting *National Information*, 737 So.2d at 920).

Furthermore, satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896 n.11. Where a rate is not contested, it is prima facie reasonable. *Louisiana Power & Light*, 50 F.3d at 328; *Trahan v. Crown Drilling, Inc.*, No. 2011 WL 3320531, at *4 (E.D. La. July 13, 2011) (Roby, M.J.) (finding that attorney's requested rate was reasonable when the rate was not challenged by the opposing party).

After reviewing the prevailing market rates for legal services in the greater New Orleans area from the applicable case law, the Court concludes that a rate of $340.00 is a reasonable rate for an attorney of Waguespack's experience and qualifications. The Court recently found that an hourly rate of $350.00 for partners with 20 to 25 years of experience was reasonable. *See DirecTV, LLC v. Ertem*, No. CIV.A. 13-487, 2015 WL 459398, at *3 (E.D. La. Feb. 3, 2015)

(Vance, J.). The Court also recently approved an hourly rate of $325 for an attorney with 19 years of experience. *See Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC*, No. CIV.A. 10–4151, 2014 WL 5039670, at *8 (E.D.La. Sept. 25, 2014).

### c. Amount of Money Involved

The Court finds that the amount of money involved is significant. This case involved a contract between TRE and ATS for the sale of ATS's receivables. Under the contract, ATS was obligated to pay the repurchase price of the receivables in the event that the account debtors failed to timely remit payment. The repurchase price is "the Face Value of a Traded Receivable, or the sum of the then unpaid Advance Amount and accrued Discount Fees with respect to the repurchased Receivable, together with (ii) the amount of any Late Charges and Seller Reimbursable Expenses that may then be due and owing by the Seller." The Court found that the outstanding amount of the face value of the receivables was $1,322,069.47, the late charge was $94,028.22, and the seller reimbursable expenses were $2,428.57. Based on the foregoing, the Court entered a judgment against ATS in the amount of $1,418,526.26.

### d. Character and Extent of Work Performed and Intricacy of Facts

This case involved the collection of money owed pursuant to a contractual agreement. TRE filed the initial complaint on March 24, 2014 against nine defendants, which included ATS and the eight account debtors. Between March 28, 2014 and May 14, 2014, the summons were issued and eight of the nine were returned executed. The summons for one of the account debtors, Mackford Healthcare Agency, did not return executed and had to be reissued. After all

the defendants did not file response pleadings, TRE filed motions for the entry of default on May 2, 2014 and June 25, 2014,[2] which were respectfully granted.

On May 22, 2014, TRE filed a motion for default judgment. However, on July 15, 2014, the Court ordered TRE to file a supplemental brief with the Court addressing whether the Court can exercise personal jurisdiction over the eight account debtors. TRE then voluntarily dismissed the eight account debtors on July 31, 2014 and on October 15, 2014 the Court ordered TRE to file a supplemental memorandum that included evidence to help the Court calculate damages. TRE complied and submitted a four page brief and an affidavit from TRE's Senior Director, Blake Hamm.

The extent of Waguespack's work in relation to ATS, only consisted of filing the complaint, filing a motion for entry of default, filing a motion for default judgment, and filing a supplemental brief and evidence in support of the motion for default judgment.

Additionally, the facts in the case were straight forward. The terms of the contract provided for a trigger that obligated the seller, ATS, to pay the repurchase price of the receivables in the event that the account debtors failed to timely remit payment. Upon review of TRE's motion for default judgment, the Court concluded that it was convinced of ATS's liability and only needed additional evidence to assess damages. *See* R. Doc. 44.

### 2. Calculation of the Fee Award

The fee application submitted by TRE seeks to recover 28.9 hours of attorney time for Waguespack. After reviewing the billing records, the Court notes that portions of the billing hours are associated with work pursuant to the claims against the defendants that were

---

[2] After the summons was reissued to Mackford Healthcare Agency, it resulted in counsel filing separate motions in relation to Mackford Healthcare Agency because the timeline was delayed by one month.

voluntarily dismissed on July 31, 2014. *See* R. Doc. 40. The hours expended on the prosecution of claims against defendants other than ATS are not recoverable and the Court will adjust the hours accordingly.

Furthermore, the billing records contain some redacted and vague entries and the Court cannot reasonably verify if the time requested is appropriate for the task performed or if the work performed is associated with the claim against ATS. As such, the Court concludes that awarding the full amount of these entries would be unreasonable and will exercise its discretion and award Waguespack fifty percent (50%) of the total time requested for the redacted and vague entries.

Aside from the redacted and vague entries, the Court finds that the other entries are reasonably detailed, and that a line-by-line analysis of the same will provide the most accurate method of determining how much time Waguespack devoted to the claims against ATS versus the account debtors. *See, e.g., Oreck Direct, LLC v. Dyson, Inc.*, No. 07–2744, 2009 WL 961276, at *2-*3 (E.D. La. Apr. 7, 2009) (Vance, J.); *GMAC*, 2003 WL 21674467, at *2. The Court need not, however, detail each and every one of the billing statements in this Order when conducting such an analysis. Rather, the Court will group the entries into categories and analyze the reasonableness of the time requested for each category against the documents which have been submitted into the record. These categories are as follows:

| Description | Listed | Approved |
|---|---|---|
| **Complaint**: preparation, drafting, service | 9.6 | 8.33 |
| **Motion for Entry of Default**: preparation, drafting, revision | 2.4 | 1.6 |
| **Motion for Default Judgment**: preparation, drafting, revision, communications with Court | 11.9 | 8.7 |
| **Other** | 5 | 1.69 |
| **TOTAL** | **28.9** | **20.32** |

### a. Complaint

The first entries on the billing records pertain to the time Waguespack expended toward preparing, drafting, and serving the complaint. Waguespack billed for a total of 9.6 hours toward the complaint, with 6.3 hours toward drafting and revising the complaint, 1.3 hours toward client communications, 0.8 hours toward filing the complaint, and 1.2 hours toward service issues.

As previously mentioned, the complaint named nine defendants, which included the eight account debtors and ATS. While time expended on the complaint reasonably encompassed drafting the claims against the account debtors, the Court finds after reviewing the complaint that a majority of the complaint included factual allegations that related to the claim against ATS. The complaint was sixteen (16) pages and only two and a half (2.5) pages were devoted solely to the account debtors. As such, the Court finds Waguespack's 6.3 hours toward drafting and revising the complaint reasonable.

The Court also finds the 1.3 hours toward client communications reasonable. Waguespack communicated with his client throughout the preparation and drafting process, and those communications appear to have impacted Waguespack's decisions to revise the complaint. Furthermore, client communications are essential to effective representation.  As for the 0.8 hours used toward preparing the complaint for filing, preparing the civil cover sheet, and issuing the summons, the Court finds these acts are administrative in nature and will be disallowed. *See CPI Card Grp.-Nevada, Inc. v. Traffic Jam Events, LLC*, No. CIV.A. 11-2873, 2013 WL 3561383, at *11 (E.D. La. July 11, 2013) (citing *Rodriguez v. Astrue*, 2012 WL 3744700, at *1 (D.Conn. Aug. 28, 2012)) (finding that filing and filling out civil cover sheets are administrative in nature).

Finally, the hours expended on April 11, 2014 in relation to monitoring the service of the complaint include a reference to the complications associated with serving one of the account debtors. This entry shall be reduced by sixty-six percent (66%) since two thirds of the work in that entry was associated with finding an alternative address for the account debtor and arranging for the reissuance of the summons. Therefore, that entry shall be reduced from 0.7 hours to 0.23 hours. The second entry for 0.5 hours on April 30, 2014 was for monitoring service, communicating with the client, and reviewing a potential filing by ATS. This entry appears to be associated with ATS and a reasonable usage of time. As a result the total time requested for the Complaint is reduced from 9.6 hours to 8.33 hours.

    b.  **Motion for Entry of Default**

The next entries on the billing records pertain to the time Waguespack expended toward the preparation, drafting, and revising the Motion for Entry of Default. Waguespack billed for a total of 2.4 hours toward the Motion for Entry of Default, with 1.6 hours toward drafting, revising, and communication, and 0.8 hours toward drafting and revising a second motion for entry of default against account debtor Mackford Healthcare Agency. The Court finds that the 1.6 hours expended on the Motion for Entry of Default to be reasonable, but the 0.8 hours spent toward drafting a motion for entry of default against Mackford Healthcare Agency shall not be allowed because it was not associated with ATS.[3] Accordingly, the time requested for the Motion for Entry of Default is reduced from 2.4 hours to 1.6 hours.

---

[3] The entries on the billing records were made on June 25, 2014 and June 26, 2014, and the Motion for Entry of Default against the account debtor Mackford Health Agency was filed on June 25, 2014 and granted on July 8, 2014.

### c. Motion for Default Judgment

Following the Entry of Default, the next entries on the billing records pertain to the time Waguespack expended toward preparing, drafting, and revising the Motion for Default Judgment and the court ordered supplemental brief. Waguespack billed for a total of 11.9 hours toward the Motion for Default Judgment, with 8.6 hours toward drafting and revising the motion and supplemental brief, 2.7 hours toward communications with the client and opposing counsel, and 0.6 hours toward miscellaneous work.

Similar to the Motion for Entry of Default, Waguespack drafted two motions for default judgment. The first motion was against ATS and seven of the account debtors. The second motion was solely against Mackford Healthcare Agency. The Court finds that the 3.4 hours expended on drafting and revising the first motion on May 13, 2014 and May 19, 2014 are reasonable. The motion was only seven (7) pages but required revision and included various exhibits. However, the 1.7 hours expended towards the second motion solely against Mackford Healthcare Agency will not be allowed.

The billing records also demonstrate that Waguespack communicated with his client before and after the Motion for Default Judgment was drafted and filed. Waguespack's communications with the client right before filing the motion was 0.3 hours and he spoke with the client for 0.4 hours after filing the motion, which is reasonable.

On July 11, 2014, Waguespack spent 1.0 hours communicating with counsel for account debtor, TR Music Group, and preparing Mackford Healthcare Agency's default pleadings, all of which were not related to ATS and shall not be allowed. On July 21, 2014, Waguespack spent 0.5 hours reviewing the Court's order to provide a supplemental brief addressing the Court's jurisdiction as to the account debtors and communicated to his client about the same.

Waguespack's work on those matters was also not related to ATS and shall not be allowed. Finally, on October 15, 2014 Waguespack spent 0.5 hours communicating to his client about the Court's order requesting additional information regarding the calculation of discount fees. The communication occurred after the other defendants were dismissed on July 31, 2014 and was a reasonable expenditure of time.

The miscellaneous work associated with the Motion for Default Judgment include reviewing court orders and communicating with the District Judge's chambers after the account debtors were voluntarily dismissed. These tasks cumulatively amount to 0.6 hours and the Court finds that the time spent is a reasonable expenditure of time. Based on the above, the time requested for the Motion for Default Judgment is reduced from 11.9 hours to 8.7 hours.

### d. Other

In addition to the entries recited above, there are various redacted, vague, and unrelated entries that must be reduced by fifty percent (50%) or entirely disallowed. On June 2, 2014 Waguespack spoke with his client regarding an unknown redacted matter for 0.5 hours and on June 23, 2014 Waguespack spoke with an unknown redacted individual regarding "status" for 0.2 hours. Due to the redactions the Court is unable to determine if the entries relate to the account debtors or to ATS. Thus, the entries shall be reduced by fifty percent (50%) from 0.7 hours to 0.35 hours.

Furthermore, there is one vague entry from June 20, 2014 that states "[e]mails with client regarding conference calls." This entry is too vague to determine the subject of the conference call and shall be reduced by fifty percent (50%) from 0.2 hours to 0.1 hours. Another vague entry is from July 28, 2014 that indicates that Waguespack spoke to his client about strategy for 0.3 hours. However, the entry was made three days before TRE filed the voluntary dismissal of the

14

account debtors and consequently it is hard to determine if the subject of the communication referenced ATS or the dismissal of the account debtors. As such, the time for the entry is reduced by fifty percent (50%) from 0.3 hours to 0.15 hours.

As for unrelated entries, there are three entries at issue. The first entry was on July 8, 2014 for 1.8 hours and includes Waguespack's communications with opposing counsel for ATS, communications with an unknown individual, and revisions to the default pleadings for account debtor Mackford Healthcare Agency. Since about two thirds of the entry appears to relate to Waguespack's communications with opposing counsel for ATS, the time shall be reduced by thirty-three percent (33%) from 1.8 hours to 1.19. The last two entries are from July 29, 2014 and July 30, 2014 and relate to the voluntary dismissal of the account debtors, shall not be allowed because they do not involve ATS.

### e. Total

As a result of the above calculations, the Court finds that Waguespack's total requested time of 28.9 hours shall be reduced from 28.9 hours to 20.32 hours. At a reasonable hourly rate of $340/hr, Waguespack is entitled to a reasonable award of attorney fees in the amount of **$6,908.08**, for the time associated with the claim against ATS.

### B. Cost

TRE seeks to recover $1,076.66 for the costs incurred in this action. Similar to the entries for attorney fees, some of the costs incurred pertain to the prosecution of its claims against the account debtors. As previously mentioned, TRE had to reissue a summons to Mackford Healthcare Agency and file separate motions for entry of default and default judgment. These unrelated costs will not be included in TRE's recovery. Additionally, the costs associated with filing the notice of voluntary dismissal (R. Doc. 40) and the brief in compliance with the Court's

Case 2:14-cv-00668-JTM-KWR   Document 57   Filed 04/29/15   Page 16 of 16

order regarding jurisdiction (R. Doc. 39) shall also not be included because they solely reference the claims against the account debtors. The unrelated costs total $50.05,[4] and TRE's recover of costs shall be reduced from $1,076.66 to **$1,026.61**.

## IV.   Conclusion

**IT IS RECOMMENDED** that **Plaintiff's Motion for Determination of Professional Fees and Costs (R. Doc. 49)** be **GRANTED**, and that The Receivables Exchange, LLC be awarded reasonable attorney's fees in the amount of **$6,908.08**, and costs in the amount of **$1,026.61**, for a total award of **$7,934.69**, to be paid by Advance Technology Services, Inc. no later than twenty one (21) days after the adoption of this Report and Recommendation by the District Judge.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 28th day of April 2015.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] The April 2014 invoice included costs that totaled $30.03 related to reissuing the summons. The June 2014 invoice included costs that totaled $3.90 related to filing the Motion for Entry of Default against Mackford Health Agency. The July 2014 invoice included costs that totaled $16.12 related to filing the Motion for Default Judgment against Mackford Health Agency and filing the voluntary dismissal and brief.